## B. Rocco v. Joseph Parczyk.

1. PLEADINGS AND PRACTICE AT LAW. *Contract. Charge of court.* If the plaintiff and defendant both testify there was a contract for services, but differ as to amount, it is not error for the court to charge the jury that " if the jury should find there was no contract, they would allow the plaintiff what his services were really worth." The jury might find that there was no contract, the minds of the parties not agreeing to the same stipulations.

2. SAME. *Contract. Wages. Evidence.* It is not error, in a suit for wages per contract, to show in support of plaintiff's understanding of the contract that when he went to work for the defendant, that he was receiving from another person, whom he voluntarily left, a much larger sum than the amount defendant insisted he was to receive.

3. SAME. *Evidence. Contradiction of witnesses as to irrelevant matter.* While great latitude is allowed in cross-examination, yet the answer of a witness cannot be contradicted as to a matter entirely irrelevant to the case.

4. EXECUTION. *Levy. Writ of error and supersedeas. Garnishment.* A levy upon personal property will be discharged by writ of error and supersedeas; so, also, a levy by garnishment.

5. SAME. *Teste.* The relation of the lien of an execution to its teste is a pure fiction of law, and ought not to be indulged further than the courts are bound to go by the well-settled law. The case of *Berry* v. *Clements,* 9 Hum., approved.

---

### FROM SHELBY.

---

Appeal in error from the Circuit Court of Shelby county. C. W. HEISKELL, J.

JARNIGAN & FRAYSER for Rocco.

W. M. RANDOLPH for Parczyk.

Rocco v. Parczyk.

McFARLAND, J., delivered the opinion of the court.

This action was commenced by Parczyk to recover wages for services rendered the defendant Rocco, as confectioner and pastry cook, for a period something more than three years. The employment and service were not denied; the controversy was in regard to the wages the plaintiff was to receive. The plaintiff himself testified that the defendant agreed to pay him at the rate of three dollars per day, and supported this theory by the testimony of other witnesses. The defendant and his witnesses testified that the contract price was forty dollars per month. The judge instructed the jury to ascertain from the proof which of these theories was the true one, and make up their verdict accordingly. He further instructed them that if they should find from the testimony that there was no contract, they would allow the plaintiff what his services were reasonably worth. The latter part of the instruction is excepted to, and it is insisted that as both the plaintiff and the defendant testified as witnesses that there was a special contract, the case should have been submitted to the jury to determine the terms of the contract, and that it was error to submit to the jury a theory which both parties repudiated, that is to say, that the services were rendered without any special contract as to the wages to be paid.

It is manifest, however, from the conflict in the testimony, that the jury might well have come to the conclusion that the parties understood the contract dif-

ferently. While they both testify that the wages were agreed upon, yet in fact they did not agree to the same terms; that the minds of the two parties did not meet and agree to the same stipulations, and hence the services were rendered without the rate of wages being settled by contract; and in such a case it is clear that the plaintiff would be entitled to recover upon a *quantum meruit.* This is the meaning of the charge, and it is clearly correct.

The court permitted the plaintiff to prove, over the defendant's objections, that he was working at the Overton Hotel at $80 per month, just before he went into the defendant's service, and that he voluntarily left the hotel. The plaintiff gave this as a reason why he did not agree to accept $40 per month from the defendant. The court told the jury they might look to the fact for that purpose alone in connection with the other testimony, and on rebuttal of this, consider the proof tending to show that the plaintiff was not at the time employed at the Overton Hotel. We think the testimony was not irrelevant. If in fact the plaintiff was receiving for similar services, $80 per month, the improbability that he would voluntarily quit that service and agree to accept from the defendant half the amount, we think might well be considered by the jury in corroboration of his testimony, that he did not agree to accept that sum. In the conflict between the testimony of the plaintiff and defendant as to the wages actually agreed to be paid, it cannot be said that the fact—if it were a fact—that the plaintiff voluntarily quit a service where

he· was receiving $80 per month, did not throw light upon the question. And for the same reasons, we think the court did not err in allowing the plaintiff to prove that after he entered the defendant's service he rejected an offer from another party of seventy-five dollars per month.

On the other hand, it is insisted that the court erred in refusing to allow the defendant to prove that the plaintiff, after he left the defendant's service, was. employed by other parties at $40 and $50 per month. But this was more than three years after the contract in question, and · when, so far as appears, wages of this character may have greatly declined. The proof rejected, therefore, did not stand upon the same ground as that admitted in behalf of the plaintiff.

·Again. On cross-examination of one Jones, a witness for the plaintiff, he testified that he lived the year before in Mississippi, came back to Memphis Christmas, had a good home there, was not kept there by the plaintiff, brought his cotton from Mississippi, and Tom Fox sold it the 7th day after Christmas. The defendant 'then proposed to prove by Fox that he had sold no cotton or had any other dealing with the witness at any time, but upon objection the testimony was excluded. The ruling was correct, upon the familiar rule that while great latitude is allowed upon cross-examination, yet the answer of the witness cannot be contradicted as to a matter entirely irrelevant to the issue in the case. To allow such contradictions would multiply collateral issues indefinitely.

Other exceptions were taken to the rulings upon questions of testimony, but we are of opinion that there is no reversible error in the record, and the judgment will be affirmed.

The record presents another question upon the appeal of the plaintiff. The judgment was rendered on the 28th of February, 1878. Under a statute applicable to courts at Memphis, where the terms continue several months, an execution issued on the 17th of April, while the term was still continuing. This execution was tested of the third Monday in January, the beginning of the term. Under this execution the sheriff summoned R. Dudley Frayser, David Corrotti and the Union and Planters Banks to appear at the next term, the third Monday in May, and answer as garnishees. Before this, and during the January term, to-wit, on the 2d of May, the defendant Rocco appeared, prayed and obtained an appeal in error from the judgment on the pauper oath. Nevertheless, at the next term two of the garnishees, Frayser and Corrotti, appeared and answered, but upon motion the execution was quashed and they were discharged, and the plaintiff appealed.

The first question arising upon this appeal is, whether the levy of the execution by garnishments was discharged by the subsequent appeal in error of the defendant in the judgment. Ordinarily the question cannot arise, as no execution issues during the term, and an appeal in error cannot be granted after the term has been adjourned. It can only arise in

cases where by special statute execution may issue before the time for appearing has expired.

It is argued that the appeal in error does not vacate, but only suspends the execution of the judgment below, and hence should not be held to displace or discharge any liens or rights acquired in the meantime. It is assumed to be analogous to a case where a writ of error and supersedeas issues after the levy of an execution, and it may be conceded that the analogy is complete. It may also be conceded that the service of the garnishment fixes a lien upon effects of the debtor or debt due to him from the garnishee equivalent in this respect to an actual levy upon personal property.

We do not find that the effect of a writ of error and supersedeas from this court as to the levy of an execution issued upon the judgment superseded, has been decided. It has been decided, however, that the issuance of an injunction discharges the lien of an execution levied upon personal property, and authorizes the officer to return the property to the debtor: *Overton* v. *Perkins*, M. & Yer., 373. And such also has been held to be the effect of a *certiorari* and *supersedeas* to bring up to the circuit court the judgment of a justice of the peace: *McCamy* v. *Lawson*, 3 Head, 256; *Littleton* v. *Yost*, 3 Lea, 267. This seems to us to be in principle identical with the question before us. The effect of the *supersedeas*, it is true, is simply to supersede and suspend further proceedings and not to reverse or undo what has been done, and so says Judge Caruthers in *McCamy* v. *Lawson*: "At

Rocco v. Parczyk.

first view it would seem that the effect of the *supersedeas* should only be to suspend the sale, but not to release the property; and as an original question we might be inclined to so hold, but we consider the contrary to be too well settled to be now disturbed by the courts." The rule is different as to a levy upon real estate: See above case and *Littleton* v. *Yost,* 3 Lea, 267.

The exception as to personal property is from necessity, for it would ruin both debtor and creditor if the sheriff is to hold personal goods to the termination of an injunction bill in chancery, or a writ of error and *supersedeas* in this court. No injury can result to the creditor where bond and security is given, but it does not alter the question that the process is obtained upon the pauper's oath, as held in *McCamy* v. *Lawson.*

In a case like the present another difficulty would occur. At the time the garnishment process was returned, the cause had been brought to this court by the appeal in error; it was therefore clear that the circuit court at that time had no jurisdiction to require the answer from the garnishees, and to render judgment against them if their answer should authorize a judgment. Any decree or judgment rendered in the inferior court after the cause is in the supreme court by writ of error and *supersedeas,* is without jurisdiction and void: *Claiborne* v. *Crockett,* Meigs, 607.

Hence no steps could have been taken. At most, the court could only supersede further proceedings. In the event the writ of error and *supersedeas* should

be dismissed without final judgment in this court, the circuit court might proceed, but the process against the garnishees would probably in the meantime have been discontinued. Besides, the practice is to render final judgment and award execution from this court.

It seems to be established, however, by the authorities referred to, that a levy upon personal property would be discharged by writ of error and *supersedeas*, and the same rule must apply to a levy by garnishment; and the argument for the plaintiff bases the present case upon its analogy to a case of writ of error and *supersedeas*.

If this proposition be considered doubtful, the result in this case must be the same, as the answer of the garnishees does not admit any liability. The answer shows that one of the defendants has money in his hands, the proceeds of property assigned to him by the defendant Rocco for the benefit of all his creditors, the assignment being made and registered before complainant's judgment was rendered, but after the first day of the term of the court at which it was rendered, and therefore after the teste of the execution. The question involved was decided against the supposed lien of the execution in the case of *Berry* v. *Clements*, 9 Hum., 312. We are asked to overrule this case, but we think it was correctly decided; at all events, we are not prepared to overrule it.

The relation of the lien of an execution to its teste, so as to overreach intermediate transfers of personal chattels, is a pure fiction of law, that ought not to be indulged further than the courts are bound

to go by the well-settled law. Such fictions should not be extended to work injustice. The case referred to is based on sound reasoning.

The judgment must, therefore, be affirmed.

Judge COOPER places his concurrence upon the latter ground.